UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. SPECIALTY INSURANCE CO., | ) | CASE NO. 4:22-CV-00749 |
| Plaintiff, | ) ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) | |
| CITY OF YOUNGSTOWN, et al., | ) ) | **ORDER AND DECISION** (Resolves Docs. 31, 33, 37, 38) |
| Defendants. | ) | |

This matter is before the Court on the parties' cross-motions for summary judgment. Docs. 31, 33. 37, 38. For the following reasons, Defendant City of Youngstown's ("the City") motion for summary judgment (Doc. 33, 38) is DENIED and Plaintiff U.S. Specialty Insurance Co.'s, ("Specialty") motion for summary judgment (Doc. 31, 37) is GRANTED.

**I.    FACTS**

The following relevant facts are gathered from the parties' joint stipulation of facts (Doc. 18), the complaint, and the underlying lawsuit.

Specialty issued a liability policy to the City for the period of December 31, 2016, to December 31, 2018. The policy sets forth several commercial general liability conditions, including the City's duties in the event of an "Occurrence", Offense, Claim or "Suit". Specifically,

  **1**. You must see to it that we, or one of our authorized agents, are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
   **a.** How, when and where the "occurrence" or offense took place;
   **b.** The names and addresses of any injured persons and witnesses; and
   **c.** The nature and location of any injury or damage arising out of the "occurrence" or offense.
  **2.** If a claim is made or "suit" is brought against any insured, you must:
   **a.** Immediately record the specifics of the claim or "suit" and the date received; and
   **b.** Notify us as soon as practicable.

> You must see to it that we receive written notice of claim or "suit" as soon as practicable.
> 3. You and any other involved insured must:
>    a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>    b. Authorize us to obtain records and other information;
>    c. Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>    d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
> 4. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our written consent. We shall have full discretion in the handling of any claim.

Doc. 1, p. 4-5, Doc. 1-4, p. 48-49, Section IV.B

On June 17, 2017, Thomas Morar ("Morar") was involved in a motorcycle accident on Oak Street Extension near Early Road in the City of Youngstown, Mahoning County, Ohio, when a tree fell on him causing injuries. It is alleged that the City owned the tree that fell and the land upon which it was rooted. Doc. 1, ¶15.

On September 6, 2017, Morar's attorney sent a letter to Martin Hume, the City's law director, advising the City of Morar's injuries, requesting the City's position in the matter, and inquiring whether the City was insured for the incident. Doc. 32. On October 17, 2017, Morar's attorneys sent the City a second letter informing the City that they represented Morar in "any and all claims arising out of an incident that occurred on our about June 17, 2017[.]" Doc. 32-1. The letter further indicated that it was a formal request to preserve and not alter any trees or shrubbery around the incident, as well as any documentation related to the incident. Id. On October 26, 2017, Nicole Alexander, the City's senior assistant law director, replied to Morar's attorneys, indicating that she had "investigated the accident involving your client, and we believe that the City is immune from liability in this matter pursuant to R.C. §2744.02. See *Seikel v. City of Akron*, 946 N.E. 2d 250, 2010-Ohio-5983, 191 Ohio App. 3d 362." Doc. 32-2. The City indicated that it did

2

have an insurance policy, but that "we have not referred this case to the insurance company for handling at this time." Id. The City further agreed to preserve the area and documents related to the claim. Id.

Morar died on April 2, 2019. On June 14, 2019, the executor of Morar's estate, Cheryl Durig, filed a lawsuit against the City in the Ohio Court of Common Pleas for Mahoning County, Ohio, Case No. 2019 CV 01225 (the "Lawsuit"). The City was served on June 25, 2019 and filed its answer and affirmative defenses on August 2, 2019. The City did not raise any defenses regarding immunity.

On March 19, 2021, the court entered a scheduling order as follows: (1) discovery cut of date on September 15, 2021; (2) dispositive motions due on October 15, 2021; (3) oppositions due on November 15, 2021; (4) a pretrial conference on December 2, 2021; (4) and a trial on January 18, 2022. Durig served written discovery on September 2, 2021. The City did not respond before the scheduled due date. Durig filed a timely motion for partial summary judgment, which the City failed to timely oppose. The City did not file a dispositive motion before the deadline. At the December 2, 2021 pretrial conference, the City moved for leave to respond to Durig's discovery requests and to file a brief in opposition to the motion for partial summary judgment. The court granted the City's motion and permitted the City to respond to discovery and to file its opposition on or before December 17, 2021 with no further extension.

On December 17, 2021, the City filed it combined motion in opposition to Durig's motion for partial summary judgment and in support of its own motion for summary judgment. Said motion contained only four pages of substantive argument based solely on immunity, despite the fact that the City had failed to raise the affirmative defense at any time prior.

3

On December 28, 2021, Durig moved to strike the City's summary judgment motion because it was untimely and outside the scope of the court's previously granted leave. On January 12, 2022, the Court heard argument on Durig's motion to strike and on the motion for partial summary judgment. At this hearing, the City conceded that it did not raise immunity as an affirmative defense. Instead, counsel argued that

> whether it be in the motion for summary judgment, the court may have its opinion whether or not that was timely or was sufficient but I think that the, the argument remains the same. Which is that, that it exists and that the court can't grant summary judgment, or can't consider summary judgment without taking into consideration the City's position of whether a sovereign immunity applies. At least for purposes of summary judgment.

Doc. 18-8, p. 10. The court noted "at no prior time had this defense been raised by the City. This was the first time." Doc. 18-8, p. 12. "The political subdivision immunity is an affirmative defense and it must be raised preliminarily prior to the scheduling of trial or pretrial unless leave is granted. So therefore, the plaintiff's motion to strike is therefore granted. And to make it clear, the court will not consider the merits of an argument for political subdivision immunity because of this." Id., p. 15. The court further denied Durig's motion for partial summary judgment and set the matter for trial on May 16, 2022.

On February 14, 2022, the parties attended private mediation which was unsuccessful. Subsequently, the City obtained outside counsel and on March 18, 2022, the City filed a notice of substitution of counsel, a motion for leave to amend the answer to assert the affirmative defense of immunity, and a motion to extend the case management dates and continue trial. The City's new counsel explained that they needed time to review the work completed on the file to date and, if permitted by the Court, would complete written discovery, take depositions, retain experts, and attempt a private mediation. Doc. 18-11. Notably, these requests came nearly three years after the suit was initiated and roughly two months prior to the already continued trial.

Durig vigorously opposed these motions. Doc. 10-12, p. 4, Doc. 18-12, p. 6.

In the interim, on April 7, 2022, the City's newly retained counsel sent a letter to Specialty, providing notice of the pending lawsuit and requesting defense and indemnity. The City concedes that this letter was the first time it provided notice to Specialty. Doc. 18, ¶52. On April 19, 2022, Specialty responded, indicating that it was investigating the matter subject to "a full and complete reservation of rights including, but not limited to, the right to deny coverage pursuant to Section IV.B [(the notice provision)]." Doc. 34-3, p. 4. Further, Specialty noted that "[i]t appears based upon the facts presently known to [Specialty] that the City has breached its obligations under this provision, resulting in a forfeiture of coverage." Doc. 34-3, p. 5. Specialty requested documents related to the claim, warning that it if "does not receive a response to this letter within two weeks, [Specialty] will proceed to issue its final coverage position." Doc. 34-3, p. 5.

The court held a hearing on the City's motion for leave to amend its answer on April 20, 2022. On April 28, 2022, the court issued a final appealable order concluding that the City failed to timely assert the immunity defense and it was therefore waived, and as such overruling the City's motions to amend, to extend the case management dates and to continue trial. On May 5, 2022, the City moved to stay the case pending an appeal of the court's decision on the motion to amend its answer. On May 12, 2022, the court stayed the lawsuit pending the City's appeal. The City's appeal is pending in Ohio's Seventh District Court of Appeals, case number 22MA00044.

On May 9, 2022, Specialty filed the instant action, seeking a declaration that it owes no duty to defend or indemnify the City in the Lawsuit due to the City's failure to timely notify it of the claims. On May 10, 2022, Specialty sent the City a letter, denying coverage. Doc. 34-4. Specifically, Specialty noted that while the City provided certain information about the recent developments in the litigation, it had not provided a completed response to the April 19, 2022

5

letter. Specialty concluded that its review of publicly available information addressing the litigation confirmed its view that the City breached the Policy's notice provision, resulting in a forfeiture of coverage. Specialty informed the City that it had filed a declaratory judgment complaint to further address the matter.

On May 31, 2023, the City filed its answer and counterclaim herein, asserting breach of contract and seeking declaratory judgment that Specialty's complaint is premature because the Lawsuit is still pending and therefore Specialty cannot establish prejudice. Doc. 4.

## II.     LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v.*

*Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. LAW AND ANALYSIS

At issue here is whether the delayed timing of the City's notice to Specialty resulted in prejudice. As noted above, the terms of the Policy required the City to give notice of an occurrence or an offense which may result in a claim "as soon as practicable."

> Notice provisions in insurance contracts are conditions precedent to coverage, so an insured's failure to give its insurer notice in a timely fashion bars coverage. *Owens-Corning Fiberglas Corp. v. Am. Centennial Ins. Co.* (C.P.1995), 74 Ohio Misc.2d 183, 203, 660 N.E.2d 770. In *Ormet Primary Aluminum Corp. v. Employers Ins. of Wassau* (2000), 88 Ohio St. 3d 292, 725 N.E.2d 646, syllabus, we stated, 'A provision in an insurance policy requiring notice to the insurer 'as soon as practicable' requires notice within a reasonable time in light of all the surrounding facts and circumstances.' A similar requirement is applied to a provision that compels notice 'immediately.' Id. at 303, 725 N.E.2d 646. Generally, the question of timeliness calls into play matters to be discerned by the finder of fact; however, it is also true that 'an unexcused significant delay may be unreasonable as a matter of law.' Id. at 300, 725 N.E.2d 646.

*Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St. 3d 512, 517.

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" and "suit" as "a civil proceeding in which 'damages' because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged…[.]" Doc. 1-4, p. 51, 54, 55, Section V. The Policy required the City to notify Specialty "as soon as practicable" if a claim or suit was brought against it.

> Under Ohio law, an insurer may deny coverage based on the breach of a timely notice provision when the insurer 'is prejudiced by the insured's unreasonable delay.' *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 945 (Ohio 2002). An unreasonable delay in notice 'gives rise to a presumption of prejudice to the insurer,' which the insured may thereafter rebut. *Id*. at 947. Late notice can prejudice an insurer if they lose options to protect their interests, 'leaving them to deal with decisions made by the insured.' *Ormet Primary Aluminum Corp. v. Emp'rs Ins. of Wausau*, 725 N.E.2d 646, 655-56 (Ohio 2000).

*Canton Drop Forge, Inc. v. Travelers Cas. & Sur. Co.*, No. 21-3349, 2021 WL 5895789, at *2 (6th Cir. Dec. 14, 2021).

The City failed to give timely notice here and the "unexcused significant delay" was unreasonable as a matter of law. *Goodyear Tire & Rubber Co*., 95 Ohio St. 3d at 517. There is no dispute that the incident occurred on September 6, 2017, the lawsuit was filed on June 14, 2019, and the City did not notify Specialty until April 7, 2022. Doc. 18. At its core, this case is little more than the City attempting to get a second bite at the proverbial apple to cover up its extreme incompetence in litigating the case up to that point of finally hiring outside counsel who notified Specialty.

The City identified Jeff Limbian, the City's Law Director, as its corporate representative pursuant to Fed.R.Civ.P. 30(b)(6). Limbian became the Law Director in 2018. He described his role as

> the adviser to the mayor, both on legal matters and other matters. I am the attorney who directs assistant law directors, the prosecutor, assistant prosecutors, the health coordinator, the risk manager, the two secretaries. And I advise all departments, department heads, handle at least the incoming complaints, disciplinary matters for employees, civil lawsuits, engage in criminal lawsuits, discuss matters with police officers, detectives, the chief of police and the fire chief, contract discussions, contract negotiations with outside businesses, labor issues.

Doc. 31-1, p. 12. Thus, Limbian was identified as the best individual to speak on behalf of the City on the facts surrounding the underlying litigation and the decision regarding notification. Upon

8

review of his testimony, it becomes clear just how ill equipped the City was to handle the underlying litigation. Throughout his testimony, Limbian justified his complete lack of oversight in the legal department by repeatedly stating that he was not familiar with the Civil Rules or anything dealing with civil liability.

At the outset Limbian admitted that the City could have reported the accident to Specialty sooner than April 2022. Doc. 31-1, p. 38.  Limbian testified that he did not know why the City waited almost five years to notify Specialty, explaining that

> The -- well, when I say I don't know, I do know that there was the investigation and the conclusion made that there was no claim, and that immunity applied, and that there were other circumstances that – for which there was no perceived liability. So the matter was put to rest until there was notification of the lawsuit. So I think two years passed with the belief that there was no action there or no plausible litigation.

Doc. 31-1, p. 36.  Limbian admitted that he had not "read the whole policy" at issue herein. Doc. 31-1, p. 40. Upon review of the policy at his deposition, Limbian agreed that nothing in the notification clause indicated that notice was only required for "valid" claims. Doc. 31-1, p. 41. He explained that the City *intentionally* did not provide notice because it concluded that it was not liable for Morar's accident. Doc. 31-1, p. 62. When asked whether the City provided Specialty notice "as soon as practicable" as required by the policy, Limbian deferred, explaining that "I think those are factors for a civil litigant to answer. I'm not really a civil litigant. But my appreciation is that that's still practicable notice." Doc. 31-1, p. 54.  He conceded that he was not aware of any circumstances that prevented the City from reporting the accident.  Doc. 31-1, p. 55.

Limbian admitted that even after the City was served with summons in the underlying lawsuit on June 25, 2019, after he became Law Director, the City did not notify Specialty because the City made "the decision to handle the matter in-house". Doc. 31-1, p. 67.  Despite claiming it

9

did not have a duty to notify Specialty of the accident because it believed it had a valid immunity defense to any potential claims, the City did not file a motion to dismiss based on immunity. When asked to explain this decision, Limbian stated that it "was a decision that was made, for whatever strategic reason, by the attorney handling it at the time." Doc. 31-1, p. 73. Limbian could not explain why that decision was made because he "didn't ask that question, so I don't know." Id. He explained that the answer was likely in the attorney's files regarding the case, but that he "didn't review the entire file" and therefore did not know why the decision was made. Id.

Regarding the City's failure to serve any offensive discovery, Limbian was similarly unaware of the City's position. Limbian explained that "I don't know why tactically that decision was made. I just know that it was made." Doc. 31-1, p. 79. He verified that it was important to issue discovery "to be able to find out information regarding the plaintiff's claims, witnesses it may present at trial, expert witnesses that it may present at trial[,]" and because the City did not serve discovery, it did not know who Plaintiff planned to call at trial. Id. Limbian confirmed that as of the date of his deposition, the City was barred from conducting any discovery because the court denied the City's motion to amend the case management dates. Id. Further, Limbian confirmed that many of the City's proposed trial witnesses were not identified in its responses to Plaintiff's discovery requests and that the City did not identify all the individuals that it believed to have knowledge of the accident. Doc. 31-1, p. 82. Limbian agreed that it would be up to the judge to decide whether the City could present these witnesses at trial due to the failure to disclose them during discovery. Id., p. 84.

Plaintiff's motion for partial summary judgment relied on an expert report and an affidavit of a fact witness. As noted above, the City failed to depose either of these witnesses and failed to timely file an opposition to the summary judgment. Id., p. 90. Regarding the City's failure to timely

file a motion for summary judgment, Limbian once again indicated that "the City deemed it unnecessary." Doc. 31-1, p. 90. When asked why, Limbian deferred, stating that "once again, not being a civil litigant, I don't know personally, but that was a tactical decision made at that time." Id. Limbian further could not explain why the City failed to file a motion for summary judgment on the statutory immunity defense. Id.

On February 14, 2022, after the Court ruled on Plaintiff's summary judgment motion and set the matter for trial, the City and Plaintiff engaged in mediation. Specialty was not included or otherwise made aware of mediation. Prior to mediation, Plaintiff made a demand of $5 million. Doc. 31-1, p. 93. While there is some dispute as to whether the City made an offer, it is clear that the mediator engaged the parties by hypothetically considering bracketed settlement numbers. Doc. 31-1, p. 95. Mediation was unsuccessful. It was at that point that Limbian first considered hiring outside counsel in the matter. Doc. 31-1, p. 96.

Limbian explained that "I concluded that this was a matter that required outside counsel and greater expertise than we had demonstrated to that point. And manpower, lawyer power, and in terms of numbers of people. We didn't have the staffing to accommodate what was, in my estimation, turning into a very large case." Doc. 31-1, p. 99. Limbian testified that he made this decision based upon what he learned as a result of the mediation, specifically explaining "[t]hat we had calculated -- we, the City, had calibrated and calculated the case in a certain -- certain parameters. And when, like, the mediator was discussing numbers far in excess of what the City had viewed, it became apparent that greater depth of knowledge of civil matters was necessary, and trial work." Doc. 31-1, p. 99. In other words, the case was much bigger than Limbian previously understood. Notably, Limbian explained another factor in his decision to hire outside counsel was that during the mediation process he learned "[t]he fact that it had then become a

11

death case, all of which I learned in that process." Doc. 31-1, p. 97. Despite the wrongful death complaint being filed nearly two and a half years prior, Limbian, the Law Director, was unaware that the case involved a death until after mediation.

Limbian's testimony established that he failed to oversee the litigation until after mediation, when it became clear that the matter was beyond the City's expertise and resources. The fact that the City waited until after mediation, two and half years after the complaint was filed, to admit that it was in over its head and to call in outside resources, resulted in significant missteps and mistakes that cannot be undone.

Specialty identified Scott Stinson, Senior Claims Manager, as its corporate representative pursuant to Fed.R.Civ.P. 30(b)(6). Stinson manages the casualty group and the litigation group at Specialty. Doc. 42-1, p. 7. Stinson noted the fact that a trial was set for less than one month after they were notified raised alarm. Stinson testified that "it wasn't very hard to figure out that there was a coverage problem when we get notice of a claim one month before the case is scheduled for trial. So it's not like we had to do a whole bunch of work to figure out that the policy terms had been violated." Doc. 36, p. 115.

The City argues that Specialty did not take steps to protect its insured by conducting a substantive investigation into the incident. The City ignores the fact that Specialty only owed a duty to defend claims "to which the coverage applies." Doc. 36, p. 124-25. Coverage application is subject to the conditions in the Policy, including the notice policy. Thus, before any substantive investigation would take place, Specialty would determine whether the City satisfied the conditions.

Nothing in the policy required Specialty to conduct a prejudice analysis prior to denial. Such analysis comes in to play as a legal review, to determine whether said denial was appropriate.

12

The City points to no case law to support an argument that the onus was on Specialty to conduct an in-depth analysis or do anything more than determine that the City failed to comply with the policy.  The City's assertion that Specialty failed it by not providing coverage is not made in good faith.  Further, the determination of prejudice that goes along with such late notice is obvious (or at least should be to anyone paying attention).  Stinson noted the following as issues with the late notice.

> Once the suit was filed we didn't get a chance to assign panel counsel. As a result, we didn't get a chance to have an appropriate answer filed that specifically alleged statutory immunity or sovereign immunity as an affirmative defense. We didn't get a chance to participate in written discovery. We didn't get a chance to depose witnesses, including the folks that I mentioned earlier, and whoever else may have popped up in discovery. We didn't get a chance to identify the appropriate witnesses, whether that be damage witnesses relative to causation of his death, financial loss. So we didn't get a medical expert. We didn't get an economist. We didn't get a liability expert to opine on the tree. We didn't get a chance to file a motion of summary judgment within the time allotted by the court. So I guess we didn't get a chance to protect our interests or our exposure of liability and that of our insured. We were stuck with the decisions that the insured made.

Doc. 36, p. 117-18. Further,

> I know that we missed out on the opportunity to try to resolve this case early on before the matter was scheduled for trial. I know that there is a floor that's been put out there. I think $300,000 was offered, unbeknownst to us at a mediation. I think that a bracket may have been mentioned at the mediation with a low of 750. Which if that's the case, that's another floor that's sort of been created for a plaintiff. You know, they know that number is out there. So it makes it nearly impossible to settle a case below the floor. I know that five years has passed -- more than five years has passed since this incident. So I assume that witnesses are similar to me, in that their memories fade over years. So I believe, or I suspect, that people's memories have faded. That can't be undone by the appeal. You know, we've appealed the rule of a judge that if the appeal is successful, we're going to be back in front of a judge who's probably not real happy with our insured. I don't know how that's going to impact the future rulings of this judge, should the appeal be granted.

Doc. 36, p. 121-22

To assess prejudice the Court looks to the potential prejudice at the time of the denial of coverage, not after the fact. At the time of the denial, Specialty was faced with a rapidly approaching trial and many litigation mistakes including, but not limited to, the failure to assert an immunity defense. The City contends that because it sought to appeal the court's denial of its motion to amend its answer to assert the immunity defense, that Specialty's denial was premature, and that the appellate court's decision may moot any prejudice.

From the record, it appears that the City decided to notify Specialty in the hopes that it would fix the prior litigation mistakes. Even assuming that the appellate court reversed the trial court's decision regarding amending its answer, the City cannot overcome the resulting prejudice. For example, in her opposition to the City's March 18, 2022 motion for leave to amend the answer to assert the affirmative defense of immunity, and to extend the case management dates and continue trial, Durig's counsel set forth the extensive prep work that had been done to date on the substantive issues in the case due to the fact that the City did not raise an immunity defense.

> Specifically, Durig argued that
>
> the City's 'newly-retained counsel excuse' for the Motions now at issue is an 'end run' to circumvent the Civil Rules, case law, and this Court's prior Orders in an attempt to accomplish that which the City is not otherwise permitted to do. Despite the City's argument, if the subject Motions are granted, this case will be unduly delayed, and the Plaintiff will certainly be prejudiced, as much of her efforts, time and expense to date will have been for nothing.

Doc. 10-12, p. 4.

> Plaintiff explained that because the immunity defense was not on the table, she instead
>
> [f]ocused her efforts, time and expense on investigation, discovery, motion practice, settlement attempts, and trial preparation relevant to what this case is, i.e. a straightforward landowner/premises liability case, rather than a case in which political subdivision immunity is an issue. Such efforts, time and expense have included retaining an expert witness (Mark Webber) and accompanying him on an extensive scene inspection, obtaining Mr. Webber's expert opinion and reducing it to affidavit testimony, interviewing lay witnesses, obtaining affidavit testimony of

14

>lay witness John Gresko, issuing a trial subpoena to Mr. Gresko, and privately mediating the case -- none of which addressed the affirmative defense of political subdivision immunity because it has never been an issue.

Doc. 18-12, p. 6.

Durig's assertion of prejudice due to the City's failure to assert the affirmative defense does not disappear if the appellate court allows the City to amend its answer. Rather, this evidences the time and effort Durig's counsel expended to try the case to that point. This is all work that could have been avoided had the City raised the defense prior to summary judgment. This work has been done and any decision by the appellate court cannot unwind this clock. This same prejudice -- the inability to erase all the time and effort that was expended that would both impact future litigation and impose heightened demands in any settlement - directly flows to Specialty. See Doc. 36, p. 121-22.

Finally, the City contends that questions of prejudice raise genuine issues of material fact that must be determined by a jury. Doc. 33, p. 11. However, 'an unexcused significant delay may be unreasonable as a matter of law." *Goodyear Tire & Rubber Co.*, 95 Ohio St. 3d at 517. Here, the prejudice due to the unexcused significant delay is so obvious, the Court questions the City's legal analysis surrounding its vigorous defense and counterclaim in this case. The City's brief often reads more like a press release, attempting to shift blame for its poor decisions and using inflammatory language rather than legal argument. Accordingly, the Court concludes that Specialty is entitled to summary judgment as a matter of law.

15

## IV. CONCLUSION

For the reasons set forth herein, the City's motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is GRANTED. This matter is hereby DISMISSED.

IT IS SO ORDERED.

DATE: September 14, 2023 /s/ *John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT